CHRISTENSON *v.* LO PARO ET AL.

(Decided May 7, 1928.)

*Messrs. Locher, Green & Woods,* for plaintiff.
*Messrs. Nicola & Horn,* for defendants.

VICKERY, J. This action comes into this court on appeal from a judgment of the common pleas court, and we have heard the case *de novo* on the same evidence introduced in the court below.

It seems that Carl E. Christenson, the plaintiff, had become the owner of a farm on the Vermilion river, in Wakeman, Ohio, which he purchased a few days before the sale alleged in this case, upon which there was a mortgage for $15,000, and that this farm had a farm house upon it and backed up on the Vermilion river and apparently was a very beautiful place.

The defendants, Carmelo S. Lo Paro and Guiseppino Lo Paro, owned a lot of land on Lorain avenue in the city of Cleveland, well worth $48,000 to $50,000, as the evidence shows, upon which property there was a mortgage, perhaps two, amounting to $20,000, but the equity of the defendants in this property was from about $25,000 to $28,000.

A real estate agent named Gibbons apparently conducted the deal here involved, and the defendants were brought in touch with the plaintiff through him. Plaintiff represented that this property which he had recently acquired for a consideration of $20,000, down on the river in Huron county, was well worth $50,000, and could be cut up into lots, and that much more than $50,000 could be realized on the sale of it. Of course, we are perfectly aware of the proposition that a representation as to value and

what can be done with a piece of property is not a sufficient misrepresentation upon which to base an action for deceit, and if this were an action in law, in deceit, we would have to hold the allegations not sufficient to sustain an action in deceit; but such is not the instant case.

As stated, there was on plaintiff's farm a mortgage of $15,000, which the defendants were to assume, and the trade was to be an even trade; the farm on the river at Wakeman being valued at about $50,000 and the real estate on Lorain avenue at about $48,000 or $50,000. The contract was entered into by the defendants below in good faith, not having any knowledge of the real value or of the condition of this land, and the papers were made out and placed in escrow, but before the time came for the execution of these papers a suit had been brought by the holder of the mortgage on the farm in Wakeman, and that suit resulted in a sale of this land for $10,010 at sheriff's sale; it being appraised by the appraisers appointed by the court of Huron county at somewhere between $14,000 and $15,000, and thus being sold for a little more than two-thirds of its appraisal.

While this negotiation was pending, the plaintiff in this suit made no attempt to preserve, nor did he preserve, the property, so that he would have it to transfer to the defendants. By some sort of a pleading the defendants were made parties to that proceeding in Huron county, and a deficiency judgment was rendered against them for the difference between the mortgage and what the land sold for, amounting to some $5,000 or $6,000. The defendants learning from those who were acquainted with

the value and knew of the condition of the real estate of farm lands around Wakeman told plaintiff that the farm that had been represented to be worth $50,000 was worth $18,000 to $20,000 only, and as above stated it was subsequently sold for $10,010.

Of course, we recognize the fact that land may not fetch its true value at sheriff's sale, but before this deal was consummated the defendants became aware of the condition of things and ultimately refused to go forward with the deal, although it seems that at the time when the deal was to be consummated they had not yet learned of the misrepresentations or fraud that had been practiced upon them, nor of the real value of this land, and were at the place where the deal was to be consummated, ready and willing to go forward. But it seems that the plaintiff was not present, nor did he appear for the purpose of finishing this deal.

However that may be, before this suit was brought the defendants learned of all the conditions surrounding this farm proposition, and learned that this farm, while of course it might have been suitable for allotment purposes, was so far from any place where the allotments could be utilized that it was useless for anything except farm land, and the value put upon it by the farmers in the vicinity, who were well acquainted with the value of the land, was $75 to $100 an acre, or $18,000 to $20,000 in all.

Defendants thereupon declined to go forward with the deal, and plaintiff brought this suit; but before the case came into this court the land had been sold, and the plaintiff had nothing to give in return, and yet he is asking this court of equity to compel

the defendants to deed over to him for nothing a property in which there is an equity of from $20,000 to $28,000. And that does not state the whole case, either. He was not only going to give nothing in return, but was going to compel, and seeks to compel, the defendants to assume a liability of some $5,000 or $6,000, and he is asking a court of equity to use its powers to compel the defendants to deed over property worth $48,000 to $50,000, in which there is an equity of $25,000 to $28,000, for absolutely nothing, and worse; and during all this time plaintiff had taken no means to preserve, so that he could have in his control, the property that he agreed to trade to the defendant. It would seem that one only would have to state the proposition to show how inequitable such a decision would necessarily be.

The plaintiff is not entitled to the relief he seeks in this case, for the reason that to use the equity power of the court to enter such a judgment would be so grossly inequitable that it would shock the conscience of the chancellor in any court. The plaintiff, not having it in his possession or power to deliver the article he promised to deliver, cannot enforce specific performance, because the record plainly shows, or it is admitted in argument, that this property was sold at sheriff's sale and that it is now owned by some one other than the plaintiff. In other words, plaintiff is seeking to get the property of the defendants, but he is not in position to deliver to the defendants the property that he agreed to transfer to them.

I know it is argued that that was because the defendants refused to go forward, wherefore it is claimed that it is the defendants' fault. If the

plaintiff wanted to have this transaction completed, he had to be in readiness to tender, and had to be able to perform his part of the contract. Not being able to do so, he is not entitled to the relief sought. To enforce this contract, even though it had been breached by the defendants, would be visiting the defendants with a penalty such as is unheard of in a court of equity.

We do not think the plaintiff is entitled to recover for the reasons outlined. There may be a decree for the defendants.

*Decree for defendants.*

SULLIVAN, P. J., and LEVINE, J., concur.